United States District Court
Southern District of Texas
**ENTERED**
December 21, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAWANDA BEASLEY JONES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-1829 |
| | § | |
| EDUCATION AFFILIATES INC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Pending before the Court is the defendant's, Education Affiliates Inc. ("EAI"), motion for summary judgment (Dkt. No. 20). The plaintiff, Lawanda Beasley Jones ("Jones"), has filed a response in opposition to the motion (Dkt. No. 23) and EAI has filed a reply (Dkt. No. 25). EAI has also objected to certain facts contained in Jones' response (Dkt. No. 26).[1] After having carefully considered the motion, response, reply, the record and the applicable law, the Court determines that the defendant's motion for summary judgment should be **GRANTED**.

### II.   FACTUAL OVERVIEW

This is an employment case in which Jones, a former employee, alleges that EAI terminated her employment in violation of the anti-retaliation provision of the Fair Labor Standards Act ("FLSA"). In September 2013, Jones began employment with EAI as Director of Admissions of the Houston North campus. (Dkt. No. 23, Ex. 4 ¶4). Glen Tharp, Regional Vice President for EAI ("Tharp"), recommended Jones for the job. *Id*. Jones was hired by and reported to Arturo Cervantes, Campus President of the Houston North campus ("Cervantes"). *Id*.

---

[1] EAI has filed a separate document lodging several objections to Jones' response, stating that much of her evidence is improper and inadmissible. (Dkt. No. 26). The Court denies all of EAI's objections.

As Director of Admissions, Jones managed the entire Admissions Department, which consisted of eight employees.  (Dkt. No. 23, Ex. 3 at 210).

Jones contends that on February 24, 2014, two of her non-Hispanic subordinates, Carrin Wenzel ("Wenzel") and Jennifer Rollie ("Rollie"), communicated to her that they felt discriminated against by Cervantes.  (Dkt. No. 23, at 3).  On February 27, 2014, two anonymous Houston-North campus employees called EAI's employee hotline.  (Dkt. No. 20, Ex. 3 at ¶9). The first caller claimed that she felt bullied by some of the Hispanic employees.  *Id.*  The second caller alleged that Cervantes gave preferential treatment to Hispanic employees in the Admissions Department.  *Id.*  It is undisputed that Jones never personally called the employee hotline.

Shortly thereafter, EAI selected Sidney Carey, Texas Area Manager and President of the Houston-South campus ("Carey"), to investigate the anonymous phone calls.  *Id.*  As part of his investigation, Carey interviewed 14 employees, including the plaintiff.  (Dkt. No. 20, Ex. 1).  At the conclusion of his investigation, Carey compiled an investigation report.  (Dkt. No. 20, Ex. 3-B).  Carey's report found that the allegations made on the phone calls were without merit.  *Id.*  In a subsequent conversation, Jones contends that Cervantes informed her that he was aware of the identity of the anonymous callers.  (Dkt. No. 23, Ex. 1 at 215).  On February 26, 2014, Cervantes suggested that Jones encourage all employees not to speak Spanish at work unless necessary for business reasons.  *Id*. at 320-21.

Jones claims that from March 5-10, 2014, Cervantes began to treat her negatively as a direct result of Carey's investigation.  *Id*. at 216.  Jones cites to instances of Cervantes yelling at her and slamming her office door as examples of the negative treatment.  *Id*. at 218-19.  Jones further alleges that Cervantes turned the Spanish speaking employees against her, which

undermined her authority.  Furthermore, she believes that her subordinates began to disrespect her and treat her negatively after she requested that they refrain from speaking Spanish.  *Id*. at 224.

On March 18, 2014, Shaterrell Adkins, an Instructor at the Houston-North campus ("Adkins"), reported to her supervisor that Jones had made some inappropriate remarks to her while at work.[2]  (Dkt. No. 20, Ex. 4 at ¶5).  On that same day, Adkins sent an email to upper management, including Cervantes, advising them of Jones' comments and summarizing the entire conversation.[3]  *Id*.  Cervantes then forwarded the email to Carey and Tharp.  *Id*.  Adkins was asked to provide a signed statement swearing to the truthfulness and accuracy of the purported remarks and she complied.  *Id*. at ¶6.

EAI claims that upon conducting an independent review of the statement provided by Adkins, Tharp decided to terminate Jones.  (Dkt. No. 20, Ex. 4 at ¶7).  Tharp provides four reasons for his decision: "**(1)** he honestly believed Beasley had made racially inappropriate and divisive comments to Adkins; **(2)** her comments were unacceptable, especially for someone in a leadership role; **(3)** her comments were insubordinate, as they indicated she had an intentional and deliberate desire to undercut Cervantes's authority; and **(4)** her comments indicated she

---

[2] Jones denies making these statements and claims that she spoke to Adkins who advised that she knows Jones is not a racist person and stated her statement was taken out of context.  (Dkt. No. 23, Ex. 1 at 47).
[3] The email read:

> LaWanda stopped me in the hall and started a conversation with me. She made the statement, "I need to hire some black people. I need people here that's gonna work." I asked her what she was talking about and she said that Mr. Cervantes told his people to do nothing, that's why we only have 17 new starts. I said, his people, she said yes, the Hispanics. She said that he treats them better than he treats us (black people). She said that he and Teresa Zavala leave together every day and thinks that nobody knows it. She also told me how much she dislikes Teresa. She said that she (Lawanda) is the only reason that Mr. Cervantes still has a job, she's the one that told Mr. Carey not to fire him. She started to tell me how well she is paid as the Director of Admissions, which is more than certain others. She said that Mr. Cervantes should stop telling people that he is in school, because he's not and he should stop telling people to call him Dr. Cervantes, because he's not a [doctor (sic)]."

(Dkt. No. 20, Ex. 4-A).

wanted to use an unlawful and discriminatory factor (race) when making hiring and employment decisions in the Admissions Department." *Id*. Tharp then provided the evidence and his findings to Tom Kartelius, Vice President of Admissions ("Kartelius") and Penny Hosey, Director of Human Resources ("Hosey"). *Id*. Upon their independent review, Kartelius and Hosey agreed that Jones' statements warranted her termination. *Id*. On March 20, 2014, Tharp and Carey met with Jones and informed her that her employment had been terminated. (Dkt. No. 23, Ex. 1 at 235).

On June 9, 2014, Jones filed a Charge of Discrimination with the EEOC. (Dkt. No. 20, Ex. 8). In it, she alleges that EAI terminated her "for being a witness in an internal discrimination complaint against Cervantes." *Id*. On April 4, 2016, Jones commenced this lawsuit against EAI in state court alleging a claim for retaliation under the FLSA. The case was removed to this Court on June 24, 2016, on the basis of diversity jurisdiction. EAI now moves for summary judgment on Jones' claim.

## III.    CONTENTIONS OF THE PARTIES

### A.    EAI's Contentions

EAI argues that Jones was discharged as a result of her divisive and racial comments made to a co-worker. In addition, she was insubordinate and her comments indicated a desire to undercut the campus president's authority. As such, EAI asserts that Jones' retaliation claim fails because she is unable to demonstrate that she engaged in "protected activity" within the meaning of the FLSA. EAI also contends that Jones cannot establish a "but for" causal connection between her alleged protected activity and termination. Further, EAI avers that Jones is unable to demonstrate that EAI's legitimate, nondiscriminatory reasons for terminating her

were merely a pretext for retaliation.  As a result, EAI contends that it is entitled to summary judgment as a matter of law.

### B.    Jones' Contentions

Jones argues that evidence exists establishing that EAI discharged her in retaliation of four separate actions: (1) being the conduit for the discrimination complaints of her subordinates; (2) following Cervantes' orders of directing her subordinates not to speak Spanish unless for business reasons; (3) participating in the investigation of the discrimination complaints; and (4) refusing to fire the parties responsible for the complaints.  She further asserts that EAI's articulated reasons for terminating her are a pretext for retaliation.  Finally, she contends that genuine issues of material fact exist regarding EAI's proffered reasons for discharging her.

## IV.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).  Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis

omitted)).  Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380).  Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 − 52 (1986)).

## V.      ANALYSIS & DISCUSSION

### A.      Jones' Claim for Retaliation under the FLSA

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against" an employee because she has "opposed" an unlawful practice asserted a charge, assisted or participated in a Title VII proceeding or investigation.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S. Ct. 2405, 2410, 165 L. Ed. 2d 345 (2006).  (citing § 2000e−3(a)). In order to prove a *prima facie* claim of retaliation under Title VII, a plaintiff must demonstrate that:  "(1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action." *Aryain v. Wal-Mart Stores Tex., LP.,* 534 F.3d 473, 484 (5th Cir. 2008) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)).  If a plaintiff meets this burden, the defendant must then articulate a legitimate, non-discriminatory reason for its decision.  *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  The burden then shifts to the plaintiff to demonstrate that the proffered reason is a pretext for retaliation.  *Id.*

Jones asserts four separate instances in which she engaged in protected activity: (1) being a conduit for the discrimination complaints of her subordinates; (2) following Cervantes' orders

of directing her subordinates not to speak Spanish unless for business reasons; (3) participating in the investigation of the discrimination complaints of Wenzel and Rollie; and (4) refusing Cervantes' instructions to fire Wenzel and Rollie for placing the phone calls.

Unfortunately, these activities, without more, are insufficient to qualify as protected activities within the meaning of Title VII. *See Davis v. Dallas Indep. Sch. Dist.*, No. 11-10090, 2011 WL 5299663, \*\*7 (Nov. 4, 2011) (reasoning that an employee's vague complaint of a hostile work environment, without referencing any discriminatory employment practice, does not constitute protected activity); *see also De Masters v. Carilion Clinic*, No. 7:12-cv-580, 2013 WL 5274505, \*8 (W.D. Va. Sept. 17, 2013) ("[m]erely ferrying [employee] Doe's [sexual harassment] allegations to [the defendant's] human relations department is in no sense oppositional, and [the plaintiff] did not engage in protected activity in so doing.").

All of Jones' purported "protected activity" was either her responsibility, as part of her job duties, or nothing more than uncorroborated allegations.[4] *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 627 (5th Cir. 2008) (an employee does not file a complaint under Section 215(a)(3) unless that employee somehow steps outside of his normal job role.). Moreover, none of these actions rise to the level of protected activity under Title VII. The Court concludes that Jones has failed to establish that she engaged in protected activity under Section 215(a)(3). Therefore, the Court need not address whether Jones has made a factual showing regarding other elements of her *prima facie* case. Therefore, EAI is entitled to summary judgment on Jones' retaliation claim as a matter of law.

---

[4] The Court is of the opinion that summary judgment is appropriate as Jones has failed to present precise evidence in the record and articulate the exact manner in which that evidence supports her claims. *Stults*, 76 F.3d at 656.

## VI.    CONCLUSION

Based on the foregoing analysis and discussion, EAI's motion for summary judgment is

**GRANTED**.

It is so **ORDERED**.

SIGNED on this 21st day of December, 2017.

_____
Kenneth M. Hoyt
United States District Judge